OPINION
{¶ 1} On October 5, 2004, the Stark County Grand Jury indicted appellee, Justin Amos, on one count of possession of cocaine in violation of R.C. 2925.11. Said charge arose from an incident wherein appellee was found to be carrying .92 grams of crack cocaine in his shoe.
 {¶ 2} On November 18, 2004, appellee filed a motion to suppress, claiming illegal arrest and search of his person. A hearing was held on same date. By judgment entry filed November 23, 2004, the trial court granted the motion.
 {¶ 3} Appellant, the State of Ohio, filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 4} "The trial court erred in sustaining appellee's motion to suppress when it incorrectly decided the ultimate legal issue. A Police Officer may take reasonable measures to ensure his safety during a lawful investigative stop."
 I {¶ 5} Appellant claims the trial court erred in granting appellee's motion to suppress based upon the finding that the handcuffing of appellee prior to a pat-down search was too intrusive. We agree.
 {¶ 6} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 7} The facts in this case are relatively uncontested. Appellee was a back seat passenger in a vehicle that was properly stopped for a traffic violation. T. at 7. As the vehicle was being pulled over, Canton Police Officer Mark Diels observed appellee making "considerable movement in the back seat. Appeared they was (sic) putting something on the floorboard or concealing something." Id. Appellee's hand appeared to be under the seat. T. at 7-8. After the stop, the driver was placed in the police cruiser and when questioned about her passengers, she stated she did not know them. T. at 8-9. The driver refused to consent to a search of her vehicle because she did not know what the back seat passenger "may have on him." T. at 9. A second officer was obtaining information from the front seat passenger. Id. Officer Diels approached the vehicle and asked appellee to exit the vehicle "because of his movements, I wanted to secure him first." T. at 10. Officer Diels placed appellee in handcuffs and conducted a pat-down search "for officer safety reasons." T. at 10, 14. Officer Diels then placed appellee in the police cruiser because "I still didn't know possibly if there was still a weapon in the vehicle or not." T. at 11, 12-13. Thereafter, Officer Diels asked appellee to slip off his shoes. T. at 12. A clear plastic baggy containing what appeared to be crack cocaine was discovered in appellee's right shoe. Id.
 {¶ 8} Officer Diels stated he had previously observed the vehicle with "some known gang members in it." T. at 7. The stop occurred at approximately 2:11 a.m. T. at 6.
 {¶ 9} The central issue is whether an officer can handcuff an individual prior to a pat-down search for weapons under the theory of officer safety. We find in certain fact situations, it is permissible under Terry v. Ohio (1968), 392 U.S. 1, 22, and its progeny:
 {¶ 10} "We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." Terry, at 30.
 {¶ 11} "Our inquiry into the legitimacy of an investigatory stop involves a two-pronged examination of its reasonableness. First, we determine `whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were aware of specific and articulable facts which gave rise to a reasonable suspicion.' UnitedStates v. Hardnett, 804 F.2d 353, 356 (6th Cir. 1986), cert. denied,479 U.S. 1097, 107 S.Ct. 1318, 94 L.Ed.2d 171 (1987). Second, we decide `whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.' Id." United States v.Garza (C.A.6, 1993), 10 F.3d 1241, 1245.
 {¶ 12} We've already determined the stop was proper. The next inquiry is whether Officer Diel's conduct in handcuffing appellee was reasonable given his suspicion that appellee may have been hiding a weapon. The facts lead us to the conclusion that Officer Diel's conduct was reasonable.
 {¶ 13} It was approximately 2:11 a.m. and two officers stopped a vehicle known to carry gang members. There were three individuals in the vehicle. The driver was secured in the police cruiser, the second officer was talking to the passenger in the front seat and Officer Diels was left to question appellee. At the time of questioning, Officer Diels was aware that the driver could not identify appellee, and she refused permission to search the vehicle because of what appellee "may have on him." Officer Diels observed appellee's furtive movements in the back seat and was concerned for his own safety.
 {¶ 14} We find all of the facts taken in total lead to the officer's conduct which was reasonable. The United States Supreme Court has recently given an imprimatur to such conduct in Muehler v. Mena (2005),125 S.Ct. 1465. Appellee argues Muehler is distinguishable, but we disagree. The search in Muehler and the search sub judice were both based on the right to conduct the search. The mode of conducting the search was at issue. As Chief Justice Rehnquist stated in Muehler at 1470, the use of handcuffs to detain an individual can be reasonable when "the governmental interests outweighs the marginal intrusion." Chief Justice Rehnquist explained, "the risk of harm to officers and occupants is minimized `if the officers routinely exercise unquestioned command of the situation.'" Id., quoting Michigan v. Summers (1981), 452 U.S. 692, 703.
 {¶ 15} Although we share the trial court's frustration that placing an individual in handcuffs may be beyond the pale for a routine stop and as part of standard police procedure, we do not find it to be a violation of appellee's Fourth Amendment rights in this case given the facts presented.
 {¶ 16} The sole assignment of error is granted.
 {¶ 17} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby reversed.
Farmer, J., Gwin, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is reversed and the matter is remanded to said court for further proceedings consistent with this opinion.